IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| In Re: DNA Ex Post Facto Issues | ) ) ) | C.A. No.: 2:99-cv-5555-RBH |
| | ) ) | |
| Anthony Eubanks, | ) ) | C.A. No. 2:99-cv-2195 |
| Plaintiff, | ) ) ) | |
| versus | ) ) | |
| South Carolina Department of Corrections, William D. Catoe, Individually and in his official capacity as Director, South Carolina Department of Corrections, South Carolina State Law Enforcement Division, | ) ) ) ) ) ) ) | **ORDER** |
| Defendants. | ) ) ) | |
| Leonard A. Smith, et. al, | ) ) | |
| Plaintiffs, | ) ) ) | |
| versus | ) ) | C.A. No.: 2:99-1110-RBH |
| William D. Catoe, Director of the South Carolina Department of Corrections, | ) ) ) ) | |
| Defendant. | ) ) | |

CAPTIONS CONTINUED ON NEXT PAGE

1

| | | |
|---|---|---|
| Harold Gathers, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     versus | ) | C.A. No.: 2:99-2470-RBH |
| | ) | |
| William D. Catoe, Defendant B to be | ) | |
| Identified Pending Discovery; John Doe | ) | |
| and Jane Doe, Defendants C to be Identified | ) | |
| Pending Discovery, | ) | |
| | ) | |
|     Defendants. | ) | |
| | ) | |
| Terry Maness, Charles Randall Ledford, | ) | |
| David Capps, Russell Floyd, Willie | ) | |
| Workman, Rodney T. Arnold, | ) | |
| | ) | |
|     Plaintiffs, | ) | |
| | ) | |
|     versus | ) | C.A. No.: 3:99-2881-RBH |
| | ) | |
| William D. Catoe, | ) | |
| | ) | |
|     Defendant. | ) | |
| | ) | |
| Richard Grey Mayson, Johnnie Register, | ) | |
| Dewayne Beckner, Tony Lacarter, | ) | |
| Danny Nix, Terry Smith, Wayne Atkinson, | ) | |
| Stoney Morris, Ralph Sellers, Kenneth Ott, | ) | |
| Robert Wilson, Vernon Kinkle, | ) | |
| Walter Brower, James O'Shields, | ) | |
| William H. Adams, William King, | ) | |
| Kenneth Riley, James King, Frankie Purvis, | ) | |
| Ian Wilkerson, Ricky Brown, | ) | |
| Robert Funchess, Benjamin Joyner, | ) | |
| Craig Wells, Donald Barrick, Jr., | ) | |
| Mustafa Al-Mujahid, Bruce Goodwin, | ) | |
| Joseph Collins, Bobby Roach, | ) | |
| Kevin Berry, Wayne Harlen, | ) | |
| Jermaine Maffett, Marvin M. Phillips, | ) | |
| William H.Richardson, Danny Sumner, | ) | |

| | |
|---|---|
| Jimmy Davenport, Timothy Dustin, Michael Turner, Charles Wells, Derrick Manigualt, Larry Wheeler, Samuel Burt, Soloman Anderson, Robert Hightower, Clinton Daniels, Marke Walker, Johnny Strickland, Stuart Connan, John Pinkney, Anthony Marlar, Clayton Johnson, Nathan Jones, John F. Oglesby, Luther Smith, Charles L. Clayton, John Wayne Rice, James A. Jenkins, Vincent J. Ferrazzano, Imiah Anderson, Jr., Jonathan Smith, Angelo Brown, Larry Thompson, Freddie Hamilton William Heyward, Christopher Kimble, Robert Barkoot, Mark Seabrook, <br><br>    Plaintiffs, <br><br>        versus <br><br>State of South Carolina; Charles Condon, Attorney General for the State of South Carolina; Robert Stewart, Director, State Law Enforcement Division (SLED); and William D. Catoe, Director, SC Department of Corrections (SCDC), <br><br>    Defendants. | <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>C.A. No.: 2:99-2793-RBH |

This matter is the lead case in the pending litigation regarding the South Carolina DNA Act, S.C. Code Ann. §23-3-600, *et. seq.* These cases were originally assigned to Senior United States District Judge Matthew J. Perry in 1999 and were re-assigned to the undersigned on April 10, 2006. The procedural history is somewhat confusing but is summarized below.

On November 12, 1999, Magistrate Judge Robert S. Carr issued a Case Management Order in

3

which he consolidated certain cases[1], designated plaintiff Anthony Eubanks as the lead plaintiff, and appointed counsel for him. The Case Management Order provides: "This case and all cases listed on Attachment A hereto (the DNA cases) are consolidated for the purposes of pre-trial proceedings and case management, and all pleadings in any of these DNA cases shall be filed in this consolidated action and shall be captioned 'In Re DNA Ex Post Facto Issues' and shall bear docket number 2:99-5555."

Magistrate Judge Carr also signed a Report and Recommendation in which he recommended that the non-ex post facto issues be dismissed without prejudice and only the ex post facto issues in the cases be allowed to proceed. Judge Perry adopted the Report by written Order. On February 8, 2001, Judge Carr signed a Report and Recommendation in which he recommended that Judge Perry certify to the South Carolina Supreme Court the question whether the DNA Act is civil or penal in nature and that the action be stayed pending the Court's answer. Judge Perry held a hearing on September 28, 2001 during which he found that the matter did not need to be certified to the South Carolina Supreme Court. Judge Perry heard arguments on the parties' cross motions for summary judgment and took those motions under advisement. On January 10, 2003, Magistrate Judge Carr issued a Report and Recommendation in *Mayson, et al. v. State of South Carolina, et al.*, C.A. #2:99-2793 and *Maness, et al. v. Catoe*, C.A. #2:99-2881 in which he recommended *sua sponte*, in spite of the fact the cases had been consolidated with other cases as noted herein, that those cases be remanded to state court on the basis of failure by the plaintiffs to exhaust administrative remedies.

After the cases were reassigned to the undersigned, this Court entered an Order on June 28, 2006 staying the cases due to the fact that a case pending on certiorari with the South Carolina Supreme

---

[1] *Smith, et al. v. Catoe*, C.A. #2:99-1110; *Gathers v. Catoe, et al.*, C.A. #2:99-2470; *Mayson, et al. v. State of South Carolina, et al.*, C.A. #2:99-2793; *Maness, et al. v. Catoe*, C.A. #2:99-2881; and *Eubanks v. State*, C.A. No. 2:99-2195 (Amended Complaint filed in C.A. #2:99-5555).

Court[2] might have a bearing on the case. On April 12, 2007, this Court lifted the stay. The parties have submitted updated briefs regarding the motions for summary judgment, and the matter is now ripe for adjudication.

The Court shall first address the Report and Recommendations entered in *Mayson* and *Maness* that those cases should be remanded to state court.

The Magistrate Judge makes only a recommendation to this court. The recommendation has no presumptive weight. The responsibility for making a final determination remains with this court. Mathews v. Weber, 423 U.S. 261, 270 (1976). The court is charged with making a *de novo* determination of any portions of the Report and Recommendation to which a specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or may recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The Court respectfully declines to adopt the Report and Recommendation by Magistrate Judge Carr that *Mayson* and *Maness* should be remanded in their entirety to the state court from which they were removed. Since the entry of the Reports in the above cases, the Fourth Circuit has decided *Anderson v. XYZ*, 407 F.3d 674 (4th Cir. 2005). In *Anderson*, the Court held that a district court may raise the issue of exhaustion *sua sponte* but that "except in rare cases where failure to exhaust is apparent from the face of the complaint, however, a district court cannot dismiss the complaint without first giving the inmate an opportunity to address the issue." *Id*, 407 F.3d at 682. The Court finds that

---

[2] *Cannon v. South Carolina Department of Probation*, 361 S.C. 425, 604 S.E.2d 709 (Ct. App. 2004), *rev'd*, 371 S.C. 581, 641 S.E.2d 429 (2007).

the record is not clear that the plaintiffs failed to exhaust their administrative remedies[3], and this issue was not argued by the defendants in their motion for summary judgment. Therefore, the Court believes that the federal claims should not be remanded based upon lack of exhaustion. However, the Court does believe that Mayson and Maness' *ex post facto* claims under state law and the South Carolina Constitution should be remanded for disposition by the State Court, as the Court declines to exercise supplemental jurisdiction over them.

The Court will next address the merits of the plaintiffs' federal constitutional claims. The plaintiffs in these cases consist of two groups: those convicted and sentenced before enactment of the State Deoxyribonucleic Acid Identification Record Database Act, S.C. Code Ann. § 23-3-600, *et seq*. ("DNA Act") such as the lead plaintiff, Eubanks, and those whose convictions and sentences were imposed after enactment of the Act. These cases challenge the constitutionality of certain provisions of the DNA Act under the Ex Post Facto Clause of the United States Constitution . The DNA Act was originally enacted on July 1, 1995. Its stated purpose in S.C. Code § 23-3-610 was "for humanitarian and nonlaw enforcement purposes, as provided for in Section 23-3-640(B)." Code Section 23-3-640(B) provides that "the DNA profile on a sample may be used: (1) to develop a convicted offender database to identify suspects in otherwise nonsuspect cases; (2) to develop a population database when personal identifying information is removed; (3) to support identification research and protocol development of forensic DNA analysis methods; (4) to generate investigative leads in criminal investigations; (5) for quality control or quality assurance purposes, or both; (6) to assist in the recovery and identification of human remains from mass disasters; (7) for other humanitarian purposes including identification of

---

[3] Mayson's Step 1 grievance is attached to his complaint and indicates that it was not processed, since the matter was not a grievable issue. Maness does not indicate whether he attempted to exhaust his administrative remedies.

missing persons."

The DNA Act as originally enacted required persons convicted of certain crimes and sentenced before July 1, 1995 to provide a DNA sample[4] and pay a $250 fee.[5] The Act has been amended several times since its enactment to broaden the categories of crimes to which the Act applies.

Plaintiffs contend that the DNA Act violates the Ex Post Facto Clause in two respects:(1) in requiring inmates to provide a DNA sample and (2) in requiring the inmates to pay the administrative fee of $250. They assert that, since the Act became effective after their convictions and sentences, they are being subjected to an Ex Post Facto Law.

The Ex Post Facto Clause provides that "no state shall. . . pass any. . . ex post facto law." U.S. CONST., art. I, § 10, cl. 1. The prohibition of *ex post facto* laws applies only to "penal statutes which disadvantage the offender affected by them." *Collins v. Youngblood*, 497 U.S. 37, 41 (1990). "It is settled. . . that any statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was

---

[4] Former S.C. Code Ann. Section 23-3-620(B) is now codified at Section 23-3-620(C), as amended. According to Magistrate Judge Carr's Case Management Order, the provisions of the Act challenged by the plaintiffs in their Complaints provided: "(B) At such time as possible and before parole or release from confinement, a suitable sample from which DNA may be obtained for inclusion in the State DNA Database must be provided by: (1) a person who is convicted or adjudicated delinquent before July 1, 1995, and who was sentenced to and is serving a term of confinement on July 1, 1995, for: (a) criminal sexual conduct in the first degree as defined in Section 16-3-652; (b) criminal sexual conduct in the second degree as defined in Section 16-3-653; (c) criminal sexual conduct with a minor in the first or second degree as defined in Section 16-3-655; (d) assault with intent to commit criminal sexual conduct as defined in Section 16-3-656; (2) a violent criminal offender ordered by the court to provide a sample. An agency having custody of an offender shall notify SLED at least seventy-two hours before the individual is paroled or released from confinement."

[5] S. C. Code Ann. § 23-3-670 (2007).

committed, is prohibited as *ex post facto*." *Id*., 497 U.S. at 42, citing *Beazell v. Ohio*, 269 U.S. 167 (1925).

**Provision of DNA Sample**

The plaintiffs first contend that the requirement that they provide a DNA sample for inclusion in the state's datebase violates the Ex Post Facto Clause because they contend that the requirement of providing a DNA sample imposes on them additional punishment for the crimes for which they were convicted. This issue has already been decided adversely to the plaintiffs' position by the Fourth Circuit Court of Appeals in a case analyzing the Virginia DNA Act. In *Jones v. Murray*, 962 F.2d 302 (4th Cir. 1992), the Fourth Circuit held that the requirement that prisoners provide blood samples is not punitive in nature but for "the sole purpose of establishing a data bank which will aid future law enforcement." *Id*., 962 F.2d at 309. *See also*, *Rise v. State of Oregon*, 59 F.3d 1556 (9th Cir. 1995); *Gilbert v. Peters*, 55 F.3d 237 (7th Cir. 1995); *Shaffer v. Saffle*, 148 F.3d 1180 (10th Cir. 1998); *Vanderlinden v. State of Kansas*, 874 F.Supp. 1210 (D. Kan. 1995); *Kruger v. Erickson*, 875 F.Supp. 583 (D. Minn. 1995) (upholding other DNA Acts under *ex post facto* challenges). The South Carolina legislature has stated that the purpose of the DNA Act is to enable the State Law Enforcement Division to "develop DNA profiles on samples for law enforcement purposes and for humanitarian and non-law enforcement purposes . . ." S.C. Code Ann. § 23-3-610. *See also*, S.C. Code Ann. § 23-3-640(B), *infra*, setting forth the uses of the DNA database, none of which are punitive in nature.

Moreover, the South Carolina Court of Appeals has specifically held the DNA Act to be civil and not penal in nature. *See Cannon v. South Carolina Department of Probation, Parole, and Pardon Services*, 361 S.C. 425, 604 S.E.2d 709 (Ct. App. 2004)("[b]ecause the South Carolina legislature's intent appears to have been to protect the public, and not to punish these individuals who commit or

have committed the specific crimes, South Carolina's DNA Act is non-punitive and does not constitute a criminal penalty."), *reversed on other grounds*, 371 S.C. 581, 641 S.E.2d 429 (2007).[6]  The Court also notes that the South Carolina Supreme Court has held that certain reporting provisions of the South Carolina Sex Offender Registry Act do not violate the Ex Post Facto Clauses of the South Carolina and United States Constitutions.  The Court found from the statutory language that "the General Assembly did not intend to punish sex offenders, but instead intended to protect the public from those sex offenders who may re-offend and to aid law enforcement in solving sex crimes."  *State v. Walls*, 348 S.C. 26, 558 S.E.2d 524, 526 (2002).

Importantly, the United States Supreme Court has held in *Seling v. Young*, 531 U.S. 250 (2001), that the Washington sexually violent predator statute was not an unconstitutional Ex Post Facto Law, based upon the determination by the Washington Supreme Court that the Act was civil rather than criminal.  The Court cited *Kansas v. Hendricks*, 521 U.S. 346 (1997) for the proposition that "the question whether an Act is civil or punitive in nature is initially one of statutory construction."  *Seling*, 531 U.S. at 261.  "Since deciding *Hendricks*, this Court has reaffirmed the principle that determining the civil or punitive nature of an Act must begin with reference to its text and legislative history."  *Id*., 531 U.S. at 262.

Therefore, on the basis of the above authorities, the Court finds that the requirement of submission of a bodily sample for purposes of DNA testing does not increase the plaintiffs' punishment or violate the Ex Post Facto Clause.

---

[6] In its opinion reversing the Court of Appeals, the Supreme Court did not address the finding by the Court of Appeals that the DNA statute was civil and not penal or its finding that the Act did not violate the Ex Post Facto Clause, but rather relied upon statutory construction regarding the meaning of the word "paroled" to find the statute did not apply to the plaintiff.

9

**Payment of Processing Fee**

The Act additionally requires in Section 23-3-670:

(A) A person who is required to provide a sample pursuant to this article must pay a two hundred and fifty dollar processing fee which may not be waived by the court. If the person is incarcerated, the fee must be paid before the person is paroled or released from confinement and may be garnished from wages the person earns while incarcerated. If the person is not sentenced to a term of confinement, payment of the fee must be a condition of the person's sentence and may be paid in installments if so ordered by the court.
(B) The processing fee assessed pursuant to this section must be remitted to the general fund of the State and credited to the State Law Enforcement Division to offset the expenses SLED incurs in carrying out the provisions of this article.

Plaintiffs assert that the statutory requirement that they pay a $250 processing fee is violative of the Ex Post Facto Clause. "While laws that retroactively increase 'punishment' or 'impose a penalty' violate the Ex Post Facto Clause, retroactive civil or regulatory ones do not." *United States v. O'Neal*, 180 F.3d 115, 122 (4th Cir. 1999).

> In determining whether a law imposes "punishment", the Supreme Court has. . . applied a two-part test. The Court first asks whether the legislature's intent, as discerned from the structure and design of the statute along with any declared legislative intent, was to impose a punishment or merely to enact a civil or regulatory law. . . Second, even if the legislature did not intend to impose a punishment, a law still may be said to do so if the sanction or disability that it imposes is "so punitive in fact" that the law may not legitimately be viewed as civil in nature. A defendant faces a "heavy burden" in making a showing of such a punitive effect and can succeed only on the "clearest proof."

*Id*. (Citations omitted).

Therefore, in order to show that the requirement to pay the processing fee is violative of the Ex Post Facto Clause, the plaintiffs must establish that the fee is punitive based upon legislative intent or, even if the legislature did not intend to impose a punishment, that it has a punitive effect under the standards provided above.

The intent of the South Carolina legislature is shown by the fact that the Code provides that the funds generated by the fees are to be "credited to the State Law Enforcement Division to offset the expenses SLED incurs in carrying out the provisions of this article." S.C. Code Ann. § 23-3-670(B). The statute also expressly refers to the fee as a "processing fee". *Id*. Therefore, it is clear that the intent of the state legislature was not to punish inmates by imposition of the fee but rather to provide funds for the implementation and operation of the database. By analogy, the imposition of other administrative fees has been found not to be ex post facto laws. *Slade v. Hampton Roads Regional Jail*, 407 F.3d 243 (4th Cir. 2005)($1 per day charge to pretrial detainees to help offset housing costs); *Taylor v. Rhode Island*, 101 F.3d 780 (1st Cir. 1996) ($15 monthly fee imposed on prisoners to partially offset cost of commitment); and *Alley v. State of Kansas*, 1997 WL 695590 (D.Kan. 1997) (medical co-payment fee).

An additional consideration regarding legislative intent is that the South Carolina DNA Act is codified in Title 23 of the South Carolina Code, the title dealing with law enforcement and public safety, and not Title 16, which addresses crimes and punishments. Additionally, as discussed above, the purpose of the fee is to help the State to cover the costs of the database. *See* Affidavit of Ira Jeffcoat, docket entry [25], submitted by the defendants in support of their motion for summary judgment. Jeffcoat, a lieutenant with SLED, indicates that "DNA testing is used to eliminate as well as identify potential suspects in law enforcement cases involving biological evidence." He further states that the processing fees imposed on prisoners only partially cover the cost and that the fees are used to cover hiring personnel, purchasing supplies and equipment, and other administrative costs.

As noted above, the South Carolina Court of Appeals has specifically held the DNA Act to be civil and not penal in nature. *See Cannon v. South Carolina Department of Probation, Parole, and*

11

*Pardon Services*, 361 S.C. 425, 604 S.E.2d 709 (Ct. App. 2004), *reversed on other grounds*, 371 S.C. 581, 641 S.E.2d 429 (2007).

Therefore, on the basis of the above arguments, the Court finds that the DNA Act is a civil statute and that the requirement of payment of a processing fee is civil and not penal.

Plaintiffs also assert that the effect of the DNA Act is punitive since the statute requires the fee to be paid before a prisoner is paroled or released. However, the defendants contend that the statute does not actually require an inmate to be held beyond his parole or release date for failing to pay the fee. They argue that the statute sets forth the **timing** of the payment but that it is not being used as and should not be interpreted as an enforcement provision, citing an Illinois case, *Doe v. Gainer*, 642 N.E.2d 114 (Ill. 1994), *cert. denied*, 513 U.S. 1168 (1995), which relied upon the *Jones v. Murray* case. In *Doe*, the Illinois court addressed a statute which required inmates to provide a blood sample before discharge, parole, or release. The court held that, since the statute did not provide that an inmate would remain incarcerated beyond his release date until the blood sample was obtained, that the statute was a timing rather than an enforcement mechanism, and the statute was not unconstitutional under the ex post facto or due process clauses. The Court agrees with this analysis of the issue and finds that the South Carolina DNA statute does not have a punitive effect on inmates. "Where a statute is susceptible to two interpretations, one of which would render the statute unconstitutional, the courts are required to interpret the statute so as to avoid its unconstitutionality." *Planned Parenthood of the Blue Ridge v. Camblos*, 155 F.3d 352, 383 (4th Cir. 1998). Therefore, the defendants' construction of the statute should be followed.

In addition, there is a presumption that the legislature "has knowledge of previous legislation as well as of judicial decisions construing the legislation when later statutes are enacted concerning

12

related subjects." *Whitner v. State of South Carolina*, 328 S.C. 1, 493 S.E.2d 777, 779 (1997). At the time of the enactment of the South Carolina DNA statute, the Fourth Circuit had already decided *Jones*, 962 F.2d 302. In *Jones*, the Court found that any requirement that an inmate would be held in prison during a mandatory parole period for failure to provide a DNA sample would violate the Ex Post Facto Clause but that the statute would not be considered to be *ex post facto* if the reference to mandatory parole were stricken from the statute. Therefore, it is reasonable for this Court to conclude that the South Carolina General Assembly was aware of *Jones* when it enacted the DNA Act and that the General Assembly intended not to require a non-paying inmate to be held beyond any mandatory parole or release date and that the intent was to simply establish the timing of the payment. In further support of this construction of the statute, the Court agrees with the assertion by the defendants that it is illogical to believe that the legislature intended to incur the additional expenses of holding and housing an inmate beyond his release or parole date simply to recoup all or part of a $250 processing fee.

Finally, the defendants point to the rule of statutory construction that the interpretation of a statute by the administering agency should be given great weight and rejected only if it is wholly erroneous. *See Udall v. Tallman*, 380 U.S. 1 (1965); *Akindemowo v. U.S.I.N.S.*, 61 F.3d 282, 284-85 (4th Cir. 1995); *Koenig v. South Carolina Department of Public Safety*, 325 S.C. 400, 480 S.E.2d 98 (Ct. App. 1996). Based upon the briefs of both counsel, it appears to be undisputed that the state agencies which administer the DNA Act (SCDC and SLED) interpret the Act as "not requiring a non-paying inmate to be held beyond any parole or release date". *See* Docket Entry 57, Revised Memorandum in Support of Defendants' Motion for Summary Judgment, p. 13; Docket Entry 56, Plaintiff's Memorandum Requested by Court Concerning Ex Post Facto Issue Update, p. 5; Docket Entry 26, Memorandum in Opposition to Plaintiff's Motion for Summary Judgment, p. 4. In addition, the Court

notes that the record contains an April, 1999 Notice to Inmates. (Exhibit 3 to [22] Plaintiff's Memorandum in Support of Motion for Summary Judgment). This Notice informs inmates of the new law and that the Department will begin taking blood samples for submission to SLED for inclusion in the DNA database. The Notice also states: "The law also requires that a person required to provide a sample pursuant to this article must pay a two hundred fifty dollar processing fee which may not be waived by the court. Offenders incarcerated by SCDC will be required to provide a sample and will be required to pay the fee to SCDC. Effective April 6, 1999, SCDC will charge an inmate required to provide a sample and process collection of the fee from the inmate's trust fund account(s)." Nowhere does the Notice state that the inmate will not be released or paroled until the fee is paid.

For all of the above reasons, the Court finds that the DNA statute should be interpreted not to require an inmate who fails to pay the processing fee to be held beyond his release date. Therefore, the Act does not have a punitive effect, and the Court finds that it does not violate the Ex Post Facto Clause.

As an additional argument with regard to those plaintiffs who were sentenced after July 1, 1995, the defendants argue that because they were in fact sentenced **after** the effective date of the Act, they cannot claim the DNA Database Act is an *ex post facto* law. This Court agrees, as it is well settled that a statute must be applied retroactively in order to be violative of the Ex Post Facto Clause. *O'Neal*, 180 F.3d 115. Therefore, the challenged provisions of the Act are not *ex post facto* as to the plaintiffs who were sentenced after the enactment of the Act on July 1, 1995. According to information provided to the Court, those plaintiffs are:

| | |
|---|---|
| William H. Adams | Ernest Larch |
| Robert Barkoot | Jermaine Maffett |
| Donald Barrick, Jr. | Raymond Magazine |
| DeWayne Beckner | Michael Malo |
| Kevin Belt | Derrick Manigault |
| Kevin Berry | Anthony Marlar |

| | |
|---|---|
| Walter Brower | Danny Nix |
| Angelo Brown | Alfred Oliver |
| Ricky Brown | Frankie Purvis |
| Charles L. Clayton | John Pinkney |
| Joseph Collins | William H. Richardson |
| Jimmy Davenport | Luther Smith |
| Timothy Dustin | Johnny Strickland |
| Bruce Goodwin | Larry Thompson |
| Wayne Harlen | Michael Turner |
| James A. Jenkins | Marke Walker |
| Christopher Kimble | Ian Wilkerson |

**Qualified Immunity**

Defendant Catoe contends that he is entitled to qualified immunity in his individual capacity. In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also*, *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998). It follows that if no right is transgressed, the inquiry ends. *Jackson v. Long*, 102 F.3d 722, 728 (4th Cir. 1996). The plaintiffs have not demonstrated that the defendant's actions violated any constitutional right. Accordingly, defendant Catoe is entitled to qualified immunity.

## CONCLUSION

In light of the Court's disposition of the issues raised by the parties, it is not necessary to address the remaining arguments by the defendants.[7] For the reasons set forth above, and based on the arguments and briefs of counsel, Defendants' [23] motion for summary judgment is accordingly **GRANTED** and Plaintiffs' [21] motion for summary judgment is **DENIED.** Plaintiffs Mayson, et al and Maness et al's claims based on violation of the ex post facto provision of the South Carolina Constitution are REMANDED to the state court from which they were removed.

**IT IS SO ORDERED.**

s/ R. Bryan Harwell<br>
R. Bryan Harwell<br>
United States District Judge

Florence, SC
October 19, 2007

---

[7] Defendants Catoe, SCDC, and SLED assert Eleventh Amendment immunity as to plaintiffs' claims for money damages.   Defendants SCDC and SLED contend they are not "persons" under 42 U.S.C. § 1983. Defendant Catoe contends he is not a proper party for the plaintiffs' claims for equitable relief since he is no longer the director of SCDC and S.C. Code § 23-3-670 requires the $250 fee to be "remitted to the general fund of the State and credited to the State Law Enforcement Division . . ."